Good morning. Before we begin with today's docket, I would first like to express how delighted we are to be sitting at South Texas College of Law in the school's 100th year with my colleagues, Judge Don Willett from Austin and Judge Kyle Duncan from Baton Rouge. Thank you to Dean Michael Berry, who's in the courtroom, and to many others who have made this day possible through logistical arrangements and other very kind invitations. Thank you. And thank you to the council who have made the trek to hopefully Houston is just as easy of a venue as New Orleans. Today we are in the Treese courtroom, named for Dean Gerald Treese. Dean Treese was a trailblazer for advocacy programs on this campus, which have excelled at South Texas College of Law because of his efforts and the tireless work of so many exceptional students and coaches on this campus. South Texas College of Law and the Fifth Circuit Court of Appeals have a long history together. In fact, I have the honor to now sit in the same seat on the Fifth Circuit that South Texas College of Law's first dean, J.C. Hutchison, sat in from 1931 to 1964. Even our local federal courthouse, the Bob Casey Courthouse just down the street, is named after a South Texas College alumnus, Congressman Bob Casey, who graduated in 1940. With that, we look forward to the arguments today from council, and the first case on today's docket is case number 21-10924, Christopher Wooten v. Bobby Lumpkin. You may proceed. Thank you, Judge Elrod. Good morning, and may it please the court. There are four reasons this court should vacate the decision below. First, any attorney who is familiar with the governing law and has familiarized him or herself with the relevant prior disposition would know that Christopher Wooten's maximum exposure at a jury trial on this indictment was a misdemeanor conviction, one year in jail, at worst, or possibly an acquittal or dismissal. Mr. Wright, can you move the microphone a little over or something, because maybe speak up. I can be louder. Thank you. Second, Your Honor, the two attorneys who were constitutionally obligated to make sure that that point behaved as though they were oblivious to it. Third, the state habeas trial court gave reasons for denying Mr. Wooten's petition on the merits. They were no error by the district court and no deficient performance, nothing wrong by trial counsel, also apparently oblivious to the undeniable reality that was my first point. And fourth, the Texas Court of Criminal Reasons. And so under binding precedent from the United States Supreme Court, this court is required to assume or presume that the Texas CCA adopted the reasoning of the lower court. And that reasoning is conceitedly unreasonable, objectively so, and indefensible. So that's where the district court got this wrong, Your Honor. The district court treated this as a case where all of the state courts were silent about their reasons for denying the petition on the merits. And in that situation, I would agree. A federal court's task is to try to come up with a reason and then defer to that reason. That is not the case here. The state habeas trial court gave its reasons. And those reasons are just wrong. Your Honors, I don't know if you're familiar with the term gaslighting. I think it's after a 1930s play or an Ingrid Bergman movie they made out of the play. It means to treat someone as though they were crazy. That's probably the impact of this plea proceeding on Mr. Wooten. Now, he had a sense that the state could not rely on that original disposition. But he definitely did not have the sophistication of an attorney. And he didn't have the certainty that anyone who had looked at this and who was familiar with Texas law would have. It's a simple question. His maximum exposure is either acquittal, dismissal, or conviction on a misdemeanor at a jury trial. And if the court understands that reality, which I don't think that my friend is going to deny, then none of Respondent's other arguments can carry the day in this case. So tell me what's wrong with the approach that would say that Brecht harmless error requirement would resolve the case because your client has so many other DWI and felony convictions that could have established the enhanced charge? A couple of reasons, Your Honor. First of all, the alternative DWI conviction was not a part of the state habeas court record. And so that is not an approach this court could take under the relitigation bar of 2254D. In other words, that assumes that we have surpassed that almost insurmountable step for a state prisoner in federal habeas. And I think that's enough to send the case back to the district court because the district court never performed a de novo analysis of prejudice or anything else. The court was operating under relitigation bar. But second, our position is that the second 1986 misdemeanor conviction, what would have been the second overall true conviction, had a problem with the waiver of counsel in that case. Now, the district court said, I'm not going to consider that. The district court said, I'm not going to retry petitioner on evidence that wasn't presented in the original proceeding nor in the state habeas proceeding. And so that sort of takes that second misdemeanor off the table. The only other one I think that they could use to establish a felony liability is what we might call the fourth disposition, the prior felony. And that was pleaded in this indictment as a habitual offender enhancement. On that one, and Mr. Wooten did admit that it was true that he had previously been convicted of that, that would expose him to a maximum of 10 years. So you have to have another felony to elevate it to make the sentence that he had lawful. But not only that, Your Honor. In the context of a guilty plea, it's my understanding and the district court's understanding that prejudice is based on whether or not the defendant would have chosen to go to trial or chosen not to plead guilty. If the error is recognized by any of the people who were involved in this conviction from Howard County, we never have this guilty plea because it can't be accepted. It can't be made. It just simply isn't a felony offense in the way that it was structured. And I think that satisfies Brecht as well. So I think that if the court agrees with me that we've overcome the relitigation bar, the appropriate thing might be to just vacate the decision and send it back to the district court and say, is this real? I would also say that if the court takes a broader view of the evidence, at least the uncontested evidence, so you're outside the record of the original state habeas proceeding and you're looking at, for instance, the party stipulations in the most recent filing where we came together and asked the Court of Criminal Appeals to sue Esponti, reconsider that first denial. Why can't we consider those stipulations? I think you can, Your Honor. But if you do that, you should see then that the parties agreed on an eight-year plea agreement. That was where the meeting of the minds was originally. And the trial judge says, no, that's not going to work. That's not enough for me. That rebuts the implicit suggestion throughout this that Mr. Wooten was dangling by the thread, you know, in the hands of an angry prosecutor. He was going to get 25 years to life, but for the prosecutor's grace, no, eight years is what the parties were okay with. The trial judge, oblivious to the problem with this case, said that's not enough. That's why you have a sentence of greater than 10 years. Okay. I just want to – can you back up? I'm sorry. Certainly. You know this record inside and out, and I need a little bit of help. The two misdemeanors in DWI is in 1986, right? Yes. And then there's a felony DWI in 2012 and the felony theft in 1995. Those are all before us in the stipulation, is that correct, that we can consider? Your Honor, I don't believe the felony theft is before you in the stipulation. I could be wrong about that, but that is something that the respondent – Okay, so we cannot consider the felony theft? That's correct, Your Honor. That's our view. You can't consider it, or you shouldn't anyway. The respondent did attempt to introduce that in the proceedings below, but the district court said no, we're not going to do that. And so I don't think that the felony theft is appropriately before the court. If the court is going to have what's effectively an open record on – or anything beyond the record that was before the original state habeas court, then I say that the court should consider both sides. Sauce for the goose is sauce for the gander. If the respondent wants to say let's look at what really happened and what really would have happened, then I would say exactly, let's do it. Then we're not talking about a misdemeanor liability, which I have to admit, there was this other conviction that was alleged and it was admitted, but we're also looking at a situation where the parties agreed to an eight-year sentence, and what would have happened if any of the people who were constitutionally required to recognize this problem at the time had done so is we probably would have ended up with that eight-year sentence, which is quite a bit better than the 13 years that he had. What would you like us to hold, Mr. Wright? I would like you to hold, first of all, that we satisfied the re-litigation bar, hold that Wilson versus Sellers applies in this situation, and so the court is reviewing the reasonableness not of reasons that the court could come up with, but the actual reasons that were given by the state trial court. Those are indefensible and unreasonable, objectively so. So we overcame the re-litigation bar, and I think that's enough to resolve the case and send it back to the district court and, say, make a de novo review, make an original review. So we should stop there, yes, and send it back to the district court to grapple with all of these other issues. I think that's probably the easiest and most straightforward response. If not, I think the court could also decide on its own that whether you're applying Brecht, whether you're applying de novo review, that to say that the harm or prejudice analysis that's been suggested by a respondent is appropriate or correct is very difficult. I think we almost overcome the Richter analysis with regards to that because, again, his maximum exposure is one year, and if he goes to jury trial, there's no risk of a 25-year sentence. Can we shift gears and talk about the Rule 11 error? You've got to show it was plain error. You don't disagree with that, do you? I'm not sure, Your Honor. I know that there's a – you're talking about what we call the intelligent plea offer. Right, the guilty plea. I think that we would have to show that it was – that no reasonable jurist could conclude that there was no error. So do you think those are the same? Yes. So a probability – reasonable probability that but for the error, your client would not have pled guilty. Yes, I think that's right. Tell me if I missed it, but as I was reading your brief, I don't know that you ever said definitively, declaratively, that your client would not have pled guilty. Did you? Did I overlook that? I'm not sure if we said it that way, Your Honor. He couldn't have, and he wouldn't – he did not want to plead guilty to this indictment. He asked even for a no low contendere plea. He was not strategically sandbagging the court on this problem. He was doing everything he could to call the court's attention to what he believed was something that was unfair and, you know, shouldn't happen. So the court couldn't have accepted the plea number one. Also, he has shown that he doesn't want to give Zim an inch on anything. So I don't think that he would have, Your Honor. You did say in your briefing that you requested that your client return, quote, to the pre-plea status so he can decide whether or not to take his case to trial. That's what I did see. I just didn't see a definitive statement that there's no way he would have pled guilty. He certainly objected to the ACCA enhancement generally, no question about that. He was opposed to the offenses that were used as those predicates. But I don't think he ever argued that the plea was unknowing or involuntary. He didn't seek to withdraw his plea after learning of the higher sentencing range in the PSR, did he? So, Your Honor, this being a state court case, he didn't have the benefit of a PSR that came out before sentencing. The district court found here, the federal district court found on pages 108-0 and 108-1 of the record, that his claim has been constant. And on pages 1423 and 1424, with regard to that error, he did tell in his petition that it was not a knowing, intelligent, involuntary plea. So I think he did raise that issue. And he also raised the issue that my counsel failed to research my prior DWIs, and that it would give me 13 years for a misdemeanor DWI. He did, I'd say admirably for a pro se applicant without training in legal procedure and who obviously has some strong negative feelings about his experience with the state's criminal justice system. And then faced with that, even the state habeas trial court says, I don't see anything wrong here. No evidence that the trial court committed error. No evidence that counsel committed error. I was off on my question. Forgive me. So looking back at the CCA, so when they denied the reconsideration request, they cited cases about harmless error, correct? They did, Your Honor. And I wonder why isn't that evidence of that the CCA relied on different grounds than the state trial court when it denied that state habeas application? Two reasons, Your Honor. First of all, I don't see that as the CCA explaining what their prior rationale was. There's new information to the CCA, and the stipulation in front of them was you based your previous decision on this error by the state trial court. There's nothing to suggest that. The part of his original claim that we asked to reconsider was a state-specific claim. Texas, unlike federal habeas law, has a freestanding actual innocence claim, and not only that, it can be sentencing-specific, so innocent of the sentence or guilty only of a lesser-included offense. Both of the cases that the court cited were in that line of cases. It is a state-only sort of freewheeling, super equitable, you know, innocent of the sentence. And so they're saying, no, you're not that. Again, they are now looking outside the record of the original proceeding to say that. So it couldn't have been the basis for their original decision. And I think that under Wilson, the court should not and cannot consider that as a rationale where it was an unexplained decision in the first place. Well, I mean, Wilson is a presumption, correct? Yes, Your Honor. And I think the way I would ask Judge Willett's question, I'm not sure if this was his question, but the citations to harmless error cases, why shouldn't we say that rebuts the presumption of looking through and we should say that the TCCA relied on its own independent grounds for denying the writ? If I could answer the question briefly, Your Honor, a couple of reasons. First of all, because the citation of those cases assumes facts that were not before the CCA the first time, so it couldn't have been what they said the first time. Second, the harm or prejudice analysis is specific to that state law claim, separate from the federal prejudice analysis for ineffective assistance of counsel or for the due process error, which is would he have pleaded guilty anyway. Those cases do not speak to that. And third, in the cases that they cited, all of this was in the record in the state habeas proceeding. So we know, for instance, in one of the cases that the counsel recognized the error. We talked about it ahead of time. And they weren't situations where the defendant, on a pro se basis, was doing everything he could to call the attention of the trial court to the error. Okay. Thank you. It seems to me that you believe that we have no problem at all applying the look-through doctrine if we wish to. And when you come back, will you address whether it conflicts with our Neal case? I will, Your Honor. Thank you. Thank you. Thank you. Can you hear me okay? Yes. May it please the Court. In 2016, Mr. Wooten made a calculated decision to plead guilty in exchange for a reduced 13-year sentence for felony DWI. But Wooten asked his court to go back and undo his decision and sentence because the state alleged an invalid enhancement error. Now, he makes several arguments for relief, but all of his arguments are nullified by the fact that he's alleging harmless error. That is, even if the indictment were corrected in this case, he would still be facing a maximum sentence range of 25 years to life. It wouldn't be a misdemeanor. And he'd be in the same position to have the same leverage at the plea bargaining stage as he did before. Should we send this back to the district court to grapple with this straight up on that point? We don't think it's necessary. I think the record's clear that he has a criminal history that supports. But that's not what the district court did. I don't think this court necessarily needs to follow what the district court did. It could choose to uphold what the district court did. Are you defending what the district court did? Is that part of your argument here today? We are defending it, but we also would put forth other reasons why this court could reject Wooten's arguments. And the district court did not adopt every possible argument that could be used to reject his arguments. Would we commit error in remanding for the district court to consider these arguments that you just raised in the first instance, the harmlessness? I don't think you would commit error to remand it, but we do believe it would be correct to deny it outright because of harmless error. Thank you. Well, counsel, it would help me if you would walk through what your harmless error argument is, since your friend on the other side denies that we could engage in a Brecht analysis. Well, Brecht's pretty clear that it applies to any constitutional claim that isn't structural. I don't think there's any allegation that this is structural error here. The argument is that Mr. Wooten has an extensive criminal history. He's committed DWI five times. I don't think he would dispute that. One of those DWIs granted, the one in 1983, could not be used for enhancement purposes, but the state didn't need it to get him to a habitual felony offender status. Okay. Well, show me how the state can get to where you want us to go without that 83. It could allege the two 1986 DWI convictions as jurisdictional enhancements in this case. It also has a 2012 felony conviction, same exact charge as in this case, by the way, which he pled guilty to and didn't challenge. And he has two felonies for burglary and theft, which would get him up to habitual offender status without the 1983 conviction. So what about Mr. Wright's argument that we can't consider the felony theft? We disagree with that. He stipulated to the felony theft. It's in the record at 859 to 863. It's before the court. I think the court could absolutely consider the felony theft. I thought that wasn't part of the same stipulation. I'm not sure, Your Honor. But regardless, you could use either the theft or the burglary and still get there. Even if you ignore the theft, there's the burglary. So you could still get habitual felony offender status with that because he also has a felony DWI in addition to the felony burglary. Do we need to decide whether the look-through presumption applies? Could we dispense with each of Wooten's claims just by concluding that none of them survived BREC? Yes, I think you could because under 2243, you have to consider whether law and justice would support relief, and that analysis ignores what the state court did. So if you took de novo review, you could certainly apply BREC in that circumstance. Now I'd like to address quickly his look-through doctrine argument. The look-through doctrine doesn't apply here for three reasons. First, the CCA did not expressly adopt the state habeas trial court findings. Anyone who practices regularly before the CCA knows that sometimes the CCA will deny without written order on findings of the trial court. In this case, the CCA did not adopt the findings of the trial court. So I think practice here suggests that the CCA was implicitly not adopting the trial court findings. Second, in denying his suggestion for reconsideration, the CCA expressly cited Ex parte Parrott and Rogers. And we do think that is an explanation by the CCA saying, look, this is harmless error. There's no way we're going to overturn this case because of his criminal history. And third, application of look-through doctrine would just be kind of pointless in this case because the state habeas trial court didn't offer any more explanation behind its findings other than just that no evidence supports these claims. And that's basically the equivalent of the CCA saying, we deny these claims on the merits. So it kind of defeats the point of the look-through doctrine to go back and seek an explanation from the lower court when, in this case, the lower court didn't provide an explanation. Now he makes three claims about constitutional error in this case. First, he claims that his plea was involuntary because he's misadvised about the enhancement and therefore did not understand the charges against him. But the record shows that Wooten not only understood his charges, but he actually had an extraordinary understanding of the charges in this case. Second, he claims he received ineffective assistance of counsel because his attorney misadvised him and failed to investigate the indictment. But he can't meet his burden of proof with that claim because there simply is no record as to how his attorney privately advised him or investigated his case. And on top of that, his attorney exercised a sound trial strategy. Pursuant to Wooten's own direction, his attorney avoided trial and sought the best plea agreement possible. And third, he claims that the trial court violated his due process rights by relying on this erroneous enhancement. But Wooten expressly waived that at the guilty plea proceeding. If you look at the transcript, Wooten carefully consulted with his attorney and decided to waive that claim. And even if this court believes the state court erroneously rejected any of these claims, he still can't overcome Section 2243's law and justice requirements. Okay. Do you not, you know, you said you're sort of arguing what the other court said, but I haven't yet heard that argument today. And that would seem to be your first argument if that were your argument. But I still haven't heard you make it. The state did not attempt to rebut the presumption in this case, did it? Which presumption, Your Honor? According to the record at 623 to 61. Is that true, that the state did not attempt to rebut the presumption and then the district court declined to impute the state trial court's findings and conclusions to the Texas Court of Criminal Appeals but posited grounds on which the Texas Court of Criminal Appeals could have denied relief, which is not what we're supposed to do, is it? So how can, are you really, are you going to make this argument or are you going to move on to one of your other arguments? Are you talking about the district court's argument? Well, I would agree that the district court decided on several grounds. First, they decided that the claim, I believe the involuntary plea claim was waived. And we do agree with that. If you look at the guilty plea proceedings, Mr. Wooten actually raised his own claims in a pro se motion. So he was fully aware of what his claims were. And even after the trial court erroneously rejected his claims, Mr. Wooten was confident that the trial court was wrong. He told the trial court that he wanted a new trial. He wanted to appeal. And the trial court was happy to grant him that. He had that option. The trial court said, you're welcome. You're welcome to plead not guilty. You can seek a new trial if you want or you can appeal this case. And the only reason he backed out was because the prosecution in this case stood up and said, hey, if you're going to challenge the indictment in this case, that goes against our plea arrangement. And once the prosecution did that, then Mr. Wooten made a calculated decision to say, well, I'd rather keep my plea agreement in this case, and I'll expressly waive my claims so that I can keep my plea agreement. And there's no suggestion in the record that this was an involuntary decision. He made that decision after the trial court erroneously ruled. Whatever you do with the good for the goose, good for the gander point, the eight years has to be put in there. The eight years, are you talking about the eight-year plea agreement they had originally? Yes. Or are you talking about the one they wanted on the suggestion for reconsideration? Did you hear the argument made by your friend on the other side? Yes. He called it a good for the goose, good for the gander. If you take part of it, then you have to take what the plea was. Well, we disagree. He pled guilty to 13 years. The eight-year arrangement was rejected by the state trial court, and that was because he had a prior 2012 DWI with a 10-year agreement. So it doesn't make sense for him to plead guilty to eight years when his previous DWI got 10 years. That was rejected for good reason. Do you wish to address the Neal case, the point that I said that Mr. Wright would have to address? The Neal case? Yes. Whether we can do a look-through or whether it's foreclosed by our precedent? We think you cannot do a look-through under Wilson v. Sellers because, as I explained before, there's three reasons why he can't do a look-through here. But are you relying on Neal in any way to say that you can't do this? No, we're not. I'm relying on Richter that says you have to determine what arguments or theories supported the state court's unexplained decision. I think some of our panels, if I'm not mistaken, have recognized the tension between Neal and Wilson v. Sellers. The idea is, well, Neal might suggest that we don't review reasons, whereas Wilson says you've got to look through the last court and look at the reasons. So some panels have said there's tension. I'm not saying that I agree with that, but I think that's the possible conundrum there. Well, I just don't think there are any reasons given by the state court in this case. As I said before, the state habeas trial court didn't provide reasons. Well, that might be a way to get around the problem maybe. Well, that would be what we suggest is that since there are no reasons given by the state habeas trial court, it's just that there's no evidence to support these claims and really explain nothing else about it. There are no reasons given, so there's no point applying the look-through doctrine here because there's nothing to look through, too. You say the Court of Criminal Appeals typically specifies that it's adopting the trial court's findings, right? Yes, it will. We have a colleague who's fond of asking, what is your very best case for … So what is your very best case to show that the CCA does that, that they typically specify that they're going to adopt the trial court's or that they are adopting the trial court's findings? I would cite to Ex Parte Reid. It's a CCA case from 2008. In that case, they say we will afford no deference to findings and conclusions that are not supported by the record and will ordinarily defer to those that are. And also in our brief, we cite to a number of examples where they do adopt the trial court findings. It's routine practice for the CCA. Frankly, you probably find hundreds of cases like that. Now I'd quickly like to address his voluntariness of his plea argument. Now he argues that his plea was involuntary because he did not have an intelligent understanding of the nature of the charges against him since he was incorrectly told that his probation for DWI in 1983 could be used for enhancement purposes. But the record makes it abundantly clear that Wooten understood the nature of the charges in this case. First, we point to the fact that this is his second conviction for the exact same charge with the exact same enhancements. In 2012, just four years before this case, Wooten pled guilty in exchange for a ten-year sentence to felony DWI as a repeat felon offender. There is no dispute that he understood the nature of the charge in 2012, so it doesn't make sense for him to say he didn't understand the nature of the charges now. On top of that, the transcript of the guilty plea proceedings shows that Wooten fully understood the charge. There he objected through pro se pleadings, as we discussed before, and that demonstrated his understanding of the enhancements in this case almost better than the trial judge, you could say. And then Wooten's own defense counsel, Mr. Hamby, he confirmed the intelligent nature of Wooten's plea through an affidavit. He instructed Hamby to better the plea offer, and Hamby states that Wooten seemed to understand the charges against him. And this is consistent with Wooten's own statements in his plea documents, in which he tells the trial court that he had a full understanding of the charges against him. I'd like to finally address the law and justice aspect of this case. To the extent the court believes Mr. Wooten overcomes the 2254-D deference to the state court, this petition still can be rejected under 2243. As the Supreme Court reminded us in Shinveer Meera's, even if a federal habeas petitioner overcomes the statutory deference to the state court under 2254, the petitioner must still persuade a federal habeas court that law and justice require federal habeas relief. The sentence in this case should be upheld because it is consistent with law and justice. There is no dispute that Wooten committed a DWI offense in this case. There is no doubt that he's committed DWI five times, and actually six times now, because he's been convicted again, it's my understanding, since this case. In addition, he's got the two other prior felonies for theft and burglary. At least the burglary, if you can't consider the theft. He's undoubtedly the sort of habitual felon that Texas intended its lengthy prison sentences for. The facts of this instance case also support a lengthy sentence here. Wooten was still serving his 10-year sentence at the time he was pulled over for DWI in this case, and he didn't take it seriously at that time. When he was pulled over, the officer asked him if he'd been drinking, and he says, poquito, even though he's a fluent English speaker. He's got open beer in his car. He fails every sobriety test. He screams and curses at the police the entire ride to getting blood tested. When he gets blood tested, he's at triple the legal limit, so he's not poquito drunk. He's very drunk. He blames officers who arrested him. He blames his attorney. This is relevant to what exactly? The law and justice argument. I'm saying law and justice does not support relief because he is not remorseful. He committed the crime. He deserves this crime because this is what he argued for. He wanted the 13-year sentence. He told his attorney he wanted the plea guilty. He told his attorney to get the best plea agreement possible. That's exactly what his attorney did. So we would say law and justice do not support overturning this conviction and sentence. What would you have us hold? Different potpourri kind of things. There are so many directions the court could go with this case. Say it again. There are so many directions the court could go with this case. What should we do? You're guiding us. What would you want us to do? We believe that you should uphold the state court's decision to reject the claims as harmless error. The CCA, when it denied reconsideration, cited harmless error-aligned cases for rejecting this case. So we think you should uphold the state court's judgment under 2254D. But you have a lot of different avenues you can go. If you have doubts about that, you can go to 2243 and reject it under a de novo review. I think the harmless error infiltrates every claim he makes. Whichever claim he comes to, he always comes back to the fact that even if this indictment were corrected, he'd still be facing a maximum sentencing range in this case. And he'd still have the same leverage at the plea bargaining stage. There's no reason to think he would have pled not guilty under those circumstances. He told his attorney he didn't want to go to trial because of his criminal history. That's undisputed, is my understanding. So he wanted to plead guilty no matter what here because he knew of his criminal history. It would be worse to go to trial than plead guilty. We ask that you affirm the district court's opinion and find the state court active reasonably in denying habeas relief. Thank you. We have your argument. Your Honor, I'd like to address the theft and burglary point that my friend made, the Judge Higginson in absentia question, and then Neal. On the theft, my friend cited pages 859 to 863 of the record. That is the respondent's motion to expand the record that the district court denied. It pages 1093 and 1094 of the record because the district court said we are not doing this. We are sticking to the record that was made in front of the state court. So I don't believe either of those convictions was stipulated to anywhere else before the first state habeas court decision. In terms of the best case and whether the CCA can be the opposite of what Wilson says you should do, one of the cases cited by my friend in his brief at footnote four is the Forsyth case. And in that case, you can look at the federal record or you can look at the fourth theft opinion from the CCA. The CCA says we deny it based on the trial court's findings, yes, and our own independent review of the record. So there's an example. There's maybe four cases cited in that footnote. And in one of those, the CCA says we're going beyond the trial court's findings. There's none of that here. There's no indication from what the CCA did that they were going outside of what they did. And ex parte read, I agree. The court says they will not adopt findings that aren't supported by the record. It doesn't say we always know when something is not supported by the record. You can trust us to be omniscient. People are human. They make mistakes. And that's what happened here in regards to the Neal question. In that case, if I read it correctly, there were two findings made by the state court. So if it's a Strickland question, no deficient performance, but even if there was, no prejudice. And so this court says we don't have to review every jot and tittle of the court's reasoning. You're still doing the 2254D deference to a finding of the state court. We have none of that here because the people who are in charge of fixing this problem said, I don't see any error. What error? So there's no trial court or even state court finding that even if there was an error, it wouldn't have affected. All of my friend's arguments could have been made in that state habeas court proceeding. And then they might have an argument under Wilson because Wilson says, one way to go about the presumption is by pointing to alternative arguments that were made to the state's highest court or arguments that were obvious from the record. None of that here because what we have are the people who had looked at the conviction said, you're wrong. It's a final conviction. So that is where things went amiss and sort of everybody who had a hand at this case, a chance to avoid the situation that we are now, messed up. But the federal constitution does not allow someone to be gaslighted into a guilty plea. I mean this is not a controversial statement. That's what we have here. In regards to the argument that this was a strategic decision and look how smart Mr. Wooten was and he really played the system to it. He ended up with a 13-year sentence on what would have been a misdemeanor at a jury trial. His goal, if his goal was to better the sentence, that's something different than, I don't want to do one year in jail. I want to do several years in jail but not 25. What do you say to somebody that says, could have gotten 25. He really did much better than that. He couldn't have gotten 25. That goes back to my very first point I started this argument with. That's not an accurate argument. His exposure on this indictment is one year or dismissal or acquittal. Now there are various ways the thing could branch off beyond that. But that is not the way that prejudice analysis goes for a guilty plea claim on collateral review. If you're going to consider the entire record, if we're going to say what really happened here, then I say you've got to look at the eight years. Now that's not the best for us. I admit that one year is better than eight or dismissal is better than eight. But if we're looking at the reality, which I think is what the respondent is arguing for, then the reality is the parties met at eight years. And it's true the trial court wasn't happy about that. But the trial court was mistaken in believing that if Step 1, there was a felony that was pleaded and prepared for trial. Ingrid Bergman actually won best actress for Gaslight. Fun Monday fact. What's your response to your friend on the other side, the law and justice point he made as he was wrapping up? I would love to know what the Fifth Circuit's position on the law and justice requirement is. Matter of fact, we may have even suggested that this court wait until that's sort of finally answered. Until then, I don't think that he can point to a Supreme Court case where someone has shown themselves entitled to relief doctrinally, which is what I would say black letter law, what the Supreme Court has said habeas review is, and nonetheless loses. There was one such case in the Federal Reporter, but the en banc court has vacated that. And we are all anxiously awaiting to see whether it will come back. Thanks. Thank you. We have your arguments. We appreciate both arguments, and this case is submitted.